REID COLLINS & TSAI LLP
William T. Reid IV
R. Adam Swick
Anne M. Bahr
One Penn Plaza, 49th Floor
New York, New York 10119
Tel.: (212) 344-5200

*Counsel to Liquidator of Creative Finance Ltd. (in Liquidation)*
*and Cosmorex Ltd. (in Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CREATIVE FINANCE LTD. (IN LIQUIDATION),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14-10358 |
| In re:<br><br>COSMOREX LTD. (IN LIQUIDATION),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 14-10359 |

## DECLARATION OF RUSSELL CRUMPLER

I, Russell Grant Crumpler, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1.   I am the liquidator of Creative Finance Ltd. (in Liquidation) ("**Creative**") and Cosmorex Ltd. (in Liquidation) ("**Cosmorex**" and collectively with Creative, the "**Debtors**"), appointed to oversee the Debtors' foreign proceedings, as I understand that term to be defined in section 101(23) of title 11 of the United States Code (the "**Bankruptcy Code**"), pending in the Eastern Caribbean Supreme Court, in the High Court of Justice, British Virgin Islands

(Commercial Division) (the "**BVI Court**"), *In the Matter of Creative Finance Ltd. (in Liquidation) and Cosmorex Ltd (in Liquidation) and the Matter of the Insolvency Act, 2003*, Claim No. BVIHC(COM) 12 of 2014 (the "**BVI Proceedings**"). I am authorized, as the Debtors' foreign representative, as I understand that term to be defined in section 101(24) of the Bankruptcy Code, to commence these Chapter 15 proceedings.

2. I am a director of KPMG (BVI) Limited. KPMG (BVI) Limited is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative (together "KPMG"). KPMG is one of the largest professional services companies in the world providing audit, tax and advisory services and has substantial experience in accounting and insolvency matters. I have more than 14 years of experience in restructuring, insolvency, and the financial sector. I am a resident and licensed insolvency professional in the BVI.

3. I am familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL), and approved by a resolution of the United Nations General Assembly on 15 December 1997 (the "**Model Law**"). I am also familiar with Part XVIII of the Virgin Islands Insolvency Act of 2003 (the "**Insolvency Act**"), which gives effect to the Model Law in the BVI.

4. Pursuant to the Insolvency Act, as the appointed liquidator of the Debtors, I am an officer of the BVI Court. Therefore, I make this declaration ("**Declaration**") as an officer of the BVI Court and request an extension of comity for the benefit of all the Debtors' creditors, whose interests I represent.

5. I hereby submit this declaration in support of (i) the Verified Petition Seeking Recognition of the BVI Proceedings as Foreign Main Proceedings Pursuant to 11 U.S.C. § 1517 and Additional Relief (the "**Verified Petition**"); and (ii) Ex Parte Application for Order (A)

Granting Provisional Relief and Injunction and (B) Scheduling Hearing ("**Application for Provisional Relief**").

6. This Declaration is based upon (i) my review of documents and financial records, including third-party pleadings and records; (ii) the books and records of the Debtors; (iii) the work I have performed as liquidator over the last several months; (iv) communications and dealings with the former directors and members of the Debtors; and (v) my personal knowledge.

### A. The Debtors

7. The Debtors were incorporated on February 20, 1995 pursuant to the provisions of the International Business Companies Act, Cap. 291 and were automatically re-registered under the provisions of the BVI Business Companies Act, 2004 on January 1, 2007. Copies of the Debtors' Certificates of Incorporation are annexed hereto as **Exhibit A**.

8. The Debtors have the same ownership and have always had their registered office and registered agent in the BVI. Since 2004, the Debtors' registered office has been located at Marcy Building, 2nd Floor, Purcell Estate, P.O. Box 2416, Road Town, Tortola, British Virgin Islands. Since 2004, the Debtors' registered agent has been ProServices Limited, which is located at the same address as the Debtors' registered office.

9. The Debtors were primarily engaged in the business of foreign exchange ("**FX**") trading through accounts provided by third parties, such as Refco Capital Markets ("**RCM**") and Marex Financial Limited ("**Marex**").

### B. Financial Difficulties and My Appointment as Liquidator

10. In March 2011, the devastating earthquake and tsunami in Japan severely affected the FX market and specifically the Debtors' positions. As a result, the Debtors were unable to

3

sustain their business strategy and due to their inability to unwind their FX positions in a cash positive manner became insolvent.

11. On December 12, 2013, qualifying resolutions were passed to place the Debtors into liquidation and appoint me as liquidator pursuant to section 159(2) of the Insolvency Act. The resolutions appointing me as the Debtors' liquidator are annexed hereto collectively as **Exhibit B**.

12. Upon my appointment, the Debtors' liquidation commenced immediately and a stay came into effect pursuant to section 175(1)(c) of the Insolvency Act.

13. On December 17, 2013, I notified all creditors of my appointment as liquidator and that the Debtors' first meetings of creditors would take place on January 2, 2014 at KPMG (BVI) Limited's offices in the BVI. At those first meetings of creditors, the Debtors' creditors confirmed my appointment as liquidator. The minutes of the first meetings of creditors are annexed hereto collectively as **Exhibit C**.

14. On February 10, 2014, the BVI Court entered an order, which (i) acknowledged my appointment as liquidator; (ii) noted the application of the BVI stay, and (iii) sanctioned me to seek Chapter 15 relief in this Court. A certified copy of the BVI Order is annexed to the Verified Petition as Exhibit A.

### C. Current Financial Condition

15. The Debtors have no known secured creditors. After I provided notice regarding the opportunity to present claims to all known potential creditors, however, unsecured creditors voluntarily submitted claims in the BVI Proceedings in the estate of Cosmorex for $32,464,652.43 and in the estate of Creative for $29,067,731.71.

16. The Debtors only confirmed significant assets are their allowed, unsecured claims against the estate of RCM. Cosmorex holds a claim against RCM for $105,850,694 and Creative

4

holds a claim for $65,445,347 (collectively, the "**RCM Claims**"). RCM's bankruptcy case was jointly administered in *In re Refco Inc.*, Case No. 05-60006, in the Bankruptcy Court for the Southern District of New York (J. Drain) (the "**Refco Case**"), and the Refco court continues to retain jurisdiction over matters relating to the liquidation trust, which is currently in place.

17. The Debtors received some distributions on the RCM Claims prior to their liquidations and understand that the next distribution to them is likely to occur in or before March 2014. The Debtors estimate that these distributions will exceed $1 million. Accordingly, the future distributions on the RCM Claims will provide the primary source of funds to satisfy the Debtors' creditors in the BVI Proceedings.

18. As of the date hereof, the Debtors also have an undrawn retainer with Reid Collins & Tsai LLP, the Debtors' U.S. counsel in connection with the filing of this Chapter 15 case, which is being held in an interest-bearing client trust account in the United States (the "**Client Trust Account**"). The Debtors deposited $25,000 in the Client Trust Account on January 30, 2014 and such funds remain there as of the date hereof. Reid Collins & Tsai LLP is only permitted to apply the funds in the Client Trust Account to outstanding invoiced amounts. The Debtors are the beneficiaries of all interest that accrues on the funds in the Client Trust Account. No application of funds from the Client Trust Account is final without authorization from either the BVI Court or a properly appointed creditors' committee.

**D.    My Actions as Liquidator in the BVI**

19. From the BVI, I have been conducting the Debtors' liquidation process since last December. I am the Debtors' only manager, the only person authorized to act on behalf of the Debtors. Further, I am solely responsible for the Debtors' day-to-day management and have done this consistently. My staff and I have conducted nearly a hundred hours of work on behalf of the

5

Debtors' estates and creditors, centralizing the Debtors' books and records, accounts, and activities in the BVI. I have also hired third parties, including retaining BVI counsel, to assist with the liquidation.

20. I have routinely communicated and met with creditors and—as stated above—they have confirmed my appointment as liquidator at a formal meeting of creditors held in the BVI on January 2, 2014. Creditors have acquiesced to the BVI Proceedings by filing millions of dollars in claims. In fact, no creditor—formally or informally—has objected to my appointment as liquidator or the BVI Proceedings. I have issued a formal report to creditors and a creditors' committee for Cosmorex has been formed to help oversee and guide me. My fees are subject to approval by the creditors' committee and/or the BVI Court. Consequently, I believe that all creditors have ascertained that the BVI is the Debtors' COMI and expect that the BVI Proceedings will involve an adjudication of all of the Debtors' claims.

### E. The Need for Chapter 15 Recognition

21. Of the tens of millions of dollars in unsecured claims, Marex has filed claims in the estate of Creative for $5,326,799.55 plus costs and Cosmorex for $5,825,720.27 plus costs. Marex's claims derive from a judgment obtained against the Debtors in the High Court of Justice, Queen's Bench Division, Commercial Court, England & Wales, in litigation captioned *Marex Financial Limited v. Creative Finance Limited and Cosmorex Limited*, case No.: 2011 Folio 893 (the "**English Judgment**").

22. To collect on its claims, Marex has been attempting to divert the Debtors' distributions on the RCM Claims to itself to the detriment of all other creditors. On August 29, 2013, Marex commenced proceedings to have the English Judgment recognized and domesticated by a New York court in the action captioned *Marex Financial Limited v. Creative Finance Limited*

*& Cosmorex Limited*, No. 653025/2013 (Sup. Ct. N.Y. Cnty.) (the "**Domestication Proceeding**"). On November 19, 2013, the New York County Clerk entered judgment in favor of Marex (the "**Domestication Judgment**"). Next and significantly—after I was appointed and gave notice of my appointment to Marex—on December 19, 2013, Marex entered into a stipulation with the Trustee of the Refco Private Actions Trust and the Refco Litigation Trust and the Refco Plan Administrator (the "**Stipulation**"). In short, the Stipulation directs future distributions, to which the Debtors would be entitled, to be paid to Marex. I was not a party to the Stipulation and was only given notice of it after it was executed. On December 30, 2013, the Stipulation was entered by the court in the Refco Case. A copy of the Stipulation as entered is annexed hereto as **Exhibit D**.

23.    Marex took these actions notwithstanding the indication that it understood that the BVI is the proper place to collect on its claims. In fact, in the months before filing the Domestication Proceeding, Marex applied to the BVI Court to appoint a liquidator over the Debtors. However, on November 18, 2013, just before the Domestication Judgment was entered, Marex—apparently opting to collect the Debtors' distributions on the RCM Claims for itself— withdrew the applications to appoint liquidators over the Debtors with the leave of the BVI Court.

24.    Accordingly, I understand that recognition of the BVI Proceedings as foreign main proceedings would confer upon the Debtors the protection of sections 362 and 1520 of the Bankruptcy Code, thereby preventing Marex from gaining an advantage over similarly situated creditors and otherwise interfering with the BVI Proceedings and the Debtors' estates.

### F. Recognition of the BVI Proceedings and Granting of Additional and Provisional Relief will Benefit All Creditors

25. The BVI Proceedings provide a centralized process to assert and resolve claims in the Debtors' estates, and to make distributions to the Debtors' creditors. Relief and recognition are requested to protect the Debtors' assets and maintain, as well as maximize, value for the Debtors' creditors. Central administration of these assets is critical to any meaningful realization of their value.

26. Thus, I now seek recognition of the BVI Proceedings as foreign main proceedings in order to garner and administer the Debtors' assets that may be located and held in the United States for the benefit of all of the Debtors' creditors and investors.

27. I also seek additional relief to promote the efficient administration of the Debtors' assets, thereby preventing piecemeal disposition or degradation of assets that would undermine the BVI Proceedings and harm the Debtors and their creditors.

28. In addition, and as set forth more fully in the Application for Provisional Relief, I submit that the requested provisional relief is urgently needed to maintain the *status quo*. In particular, a stay of Marex's actions against the Debtors' assets pending a decision on recognition is required to prevent Marex from seizing practically all of the Debtors' assets for its own benefit to the detriment of other similarly situated creditors. While I believe that this distribution will occur in March 2014, it could happen at any time. If Marex is permitted to execute upon the distributions on the RCM Claims, it will jeopardize and destroy the equitable distribution of assets in the BVI Proceedings.

WHEREFORE, I respectfully request that this Court enter orders: (i) recognizing the BVI Proceedings as foreign main proceedings and granting additional relief upon recognition;

(ii) immediate entry of an order to show cause with temporary restraining order; (iii) granting provisional and related relief; and (iv) granting such other and further relief as is just and proper.

Executed this 19th day of February, 2014.

                                                            */s/ Russell Crumpler*